Egan v. Murray.

EGAN v. MURRAY

1. **Seduction:** EVIDENCE. In an action for seduction plaintiff testified that the defendant used physical force to accomplish his purpose, and that she resisted him all she could, but that towards the last she did not resist. Upon being recalled, to the question, "Did his actions towards you and his treatment of you have anything to do with you giving in?" she answered, "Yes." *Held* that this was competent to show the means by which the act was accomplished.

2. **Evidence:** LEADING QUESTION: OBJECTION TOO LATE. No objection being made to a question as leading, an objection to the answer on that ground is of no avail.

3. ———: HANDWRITING: COMPETENCY. A witness, in answer to the question whether he was acquainted with defendant's handwriting, said, "Yes; I have seen it." *Held*, in the absence of cross-examination, that he showed himself competent to testify as to defendant's signature.

4.  ——: FACTS ASSUMED. A cause cannot be reversed on the ground that there was no direct evidence of a material matter which was, all through the trial, assumed to be true.

5.  Seduction: MEANS OF ACCOMPLISHMENT. The evidence in this case (see opinion) shows that, while defendant made to plaintiff no express promise of marriage, and did not in words lie to or deceive her, yet he as her suitor so conducted himself toward her for a long time as to win her love, and get her into his power, and led her to the reasonable inference that he intended to marry her, and thus obtained sexual intercourse with her. *Held* that the facts warranted a verdict against him for seduction. (Compare *State v. Curran*, 51 Iowa, 112.)

6.  Practice: ARGUMENT: MATTERS NOT IN RECORD. A reference by counsel in argument to matters not in the record is no ground for reversal where the court directs the jury not to consider them.

7.  Seduction: EXCESSIVE VERDICT. A verdict of fifteen hundred dollars for seduction, in a case where plaintiff became, by means thereof, the mother of an illegitimate child, cannot be regarded as excessive on appeal.

*Appeal from Lyon District Court.*—HON. G. W. WAKEFIELD, Judge.

FILED, MAY 20, 1890.

THE plaintiff averred in her petition that on or about July 3, 1888, the defendant, by means of flattery, false promises, deceits and devices, seduced and debauched her, she being an unmarried woman of previously chaste character. The answer of the defendant was a general denial. There was a trial by jury, and a verdict and judgment for the plaintiff for fifteen hundred dollars, and defendant appeals.

*J. M. Parsons* and *E. T. Greenleaf*, for appellant.

*A. Van Wagenen* and *E. C. Roach*, for appellee.

ROTHROCK, C. J.—I. The plaintiff testified, as a witness in her own behalf, that the defendant had

1. SEDUCTION: evidence. sexual intercourse with her about June 1, 1888, and that as the result of said intercourse she was delivered of a child in the month of

December of the same year. In the course of her examination in chief, and cross-examination, she stated, in a general way, that the act of intercourse occurred when the parties were out riding in a buggy. She states that the defendant used physical force to accomplish his purpose, and that she resisted him all she could, but that towards the last she did not resist. After examining other witnesses, the plaintiff was recalled, and her counsel asked her this question: "Did his actions towards you, and his treatment of you, have anything to do with your giving in?" The answer was, "Yes, sir." Thereupon the counsel for defendant moved to have the answer stricken out as leading and incompetent. The motion was overruled, and the defendant assigns the ruling as error. The evidence surely was not incompetent. It tended directly to explain the extent of plaintiff's resistance, and whether the act charged was accomplished by force and against the will of the plaintiff, or whether it was effected by means of

2. Evidence: leading question: objection too late.

the undue influence of the defendant. No objection was made to the question as leading. The objection to the answer was not sufficient to raise the objection now contended for.

II. Counsel for defendant produced a letter dated February 1, 1889, addressed to "Mary," and signed

3. ——: handwriting: competency.

"Jim," and offered it in evidence. A witness was called to prove the handwriting in the letter, and gave testimony as follows: "Q. Are you acquainted with the handwriting of J. J. Murray, and his signature? A. Yes; I have seen it.

"Q. I want you to state whether, in your opinion, this letter is in his handwriting, and whether the initials signed below were written by him. A. I should say that it is his signature."

Defendant's counsel claim that it was not shown that the witness was competent to testify to the handwriting of the defendant. The answer to the first question shows that the witness was acquainted with

defendant's handwriting. As the defendant's counsel did not cross-examine the witness as to his competency, and thereby develop the extent of his knowledge upon the subject, we must assume that it was sufficient.

III. It is further insisted there was no evidence that the damages for the alleged seduction had not been paid by the defendant. It is alleged in the petition that the damages are unpaid. This averment was perhaps unnecessary. But the objection is without merit. The whole case was tried on a theory that a demand was made which was and always had been resisted.

4. ——: facts assumed.

IV. Objection is also made that there was no evidence that plaintiff was an unmarried woman. The whole record shows this to be the fact. The defendant visited her as a suitor for some eighteen months, and in his letter to her he alludes to the matter of marriage by calling it "a union;" and, in the cross-examination of the plaintiff, defendant's counsel addressed her as "Miss Egan." We think counsel for defendant would have very little respect for a court that would reverse a judgment upon an objection so barren of merit as this.

THE SAME.

V. Objections are made to the instructions given by the court to the jury, and to the refusal to give instructions requested by the defendant. We discover no error in these respects.

VI. It is claimed that the evidence is insufficient to sustain the verdict. The court instructed the jury that, "to constitute seduction, it is not sufficient to establish sexual intercourse between the parties, but the plaintiff must also show that defendant accomplished his purpose by some artifice, or that she was induced to yield to his embrace by flattery or deception. If without being deceived, and without any false promises, deceit or artifice, she voluntarily submits to the connection, the law affords her no recovery." The foregoing is a general statement of the law applicable to the case, which has

5. SEDUCTION: means of accomplishment

frequently been approved by this court. See *Smith v. Milburn*, 17 Iowa, 30; *Delve v. Boardman*, 20 Iowa, 446; *Brown v. Kingsley*, 38 Iowa, 220; *Hopkins v. Mathias*, 66 Iowa, 333, and many other cases.

The evidence in this case shows that the defendant was the accepted suitor of the plaintiff for some eighteen months prior to the alleged seduction. His visits to her averaged about once a week. The plaintiff testified that he acted very affectionately towards her; that it was his custom to speak of her "nothing other than in a praising manner." The witness then proceeded as follows: "It was more than a year and a half ago he commenced taking improper liberties with me. I told him I did not think it was right to act that way. I told him I did not want anything to do with him after that. He then said that was what other folks did, and he did not think it was worse for us than them. He said a fellow had to have some way of finding out what a girl was. I expect he said more, but I don't remember what it was. He made an apology. I allowed him to come and see me after that. He behaved for a while, but it did not last long. I loved him at that time. I loved him right along, or I never would have allowed him to come any more. I asked him if he was waiting on any other girls. I asked him about another lady living here (witness told by counsel not to mention lady's name); with whom he had been keeping company. He said he was to go with her no more. He said it was understood when he first went with her that she was to go with anybody she wanted to, and he was to do the same. In this talk he spoke to me about a gentleman from Ellsworth who was keeping company with me. He said he thought is was not right to go with both at the same time. I did not keep company with that gentleman any longer.

"Q. Did you leave off keeping company with him, or him with you? A. I quit going with him. I quit because I thought one was enough to go with; and he

wanted me to quit, so I did. I spoke to Murray about having a girl back East. He said he had none."

There is other evidence showing that the defendant was very attentive to the plaintiff during the time of their courtship. There is no evidence in any way impeaching the plaintiff's character for chastity other than the fact that she had illicit intercourse with the defendant, and that she gave birth to a child. It is true she was about twenty-seven years old at the time she alleges she was seduced, and she does not claim that the defendant made any promises at the time of the connection which induced her to yield, nor that at any time there was an express marriage engagement, nor that he lied to her, or by express words deceived her. But this was not necessary to authorize a verdict against him for seduction. A man may be guilty of the basest deception towards a woman without the use of spoken language. The speaking of her "nothing other than in a praising manner," as expressed by this unlearned, and, so far as appears, unsophisticated woman ; her love for him, and promise that he was to go with the other woman no more ; his objections to the attentions of the man from Ellsworth, and her dismissal of that gentleman ; with other facts and circumstances appearing in the record,—may be, and no doubt were, considered by the jury as convincing evidence that the defendant abused the confidence of the plaintiff, and when he knew she was in his power, by reason of her love for him, overcame and betrayed her, and that the cause of action was as fully shown as if her ruin had been effected by reason of an express promise of marriage. See *State v. Curran*, 51 Iowa, 112. In our opinion, the evidence abundantly sustains the verdict.

VII. It is claimed that one of the plaintiff's counsel was guilty of such misconduct in his address to the jury as to require a reversal of the judgment. The alleged misconduct consisted in stating to the jury that the defendant "skipped the country after the birth of

6. PRACTICE: argument: matters not in record.

the child.'' In view of the letter written by the defendant, and other facts disclosed in evidence, we are not prepared to say that the statement of counsel was improper. If, however, it ought to have been considered outside the record, it was without prejudice, because the court told the jury to give no consideration to the remarks which were objected to by defendant's counsel.

VIII. Lastly, it is urged that the verdict is excessive. As we have said, it is in the sum of fifteen hundred dollars. The jury found, in effect,

*7. SEDUCTION: excessive verdict.*

that the defendant betrayed the plaintiff; that she passed through the terrors and travail of child-birth, and must all through life be stigmatized as having been the mother of an illegitimate child. We think the verdict is not excessive.

AFFIRMED.