C. H. BRAMLEY v. GEORGE V. JORDAN, Appellant.

**Drainage:** DIVERSION OF STREAM: INJURY TO DOMINANT ESTATE: INJUNCTION. The owner of a servient estate can not rightfully construct a dam in a stream on his own land so as to cast the water back onto the dominant estate to the injury of the same; and where this is the effect the owner of the dominant estate may restrain a continuance of the dam, even though its purpose was to divert the water of the stream and thus to reclaim land of the servient owner.

**Same.** The right of a dominant proprietor to have the water leave his estate at its lowest level is a corporeal right which he is entitled to enforce.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, DECEMBER 14, 1911.

SUIT to enjoin defendant from obstructing the waters in a watercourse resulted in a decree as prayed. The defendant appeals.—*Modified* and *affirmed.*

*Geo. A. Richardson* and *Shaw, Sims & Kuehnle,* for appellant.

*Conner & Lally,* for appellee.

Ladd, J.—Plaintiff owns the N. ½ and the defendant the S. ½ of the S. E. ¼ of the section. Through this quarter, the Chicago, Milwaukee & St. Paul Railroad extends from about forty rods east of the northwest corner to a point a little west of the southeast corner. Southwest of the railroad is a watercourse known as West Paradise Creek, entering the quarter five or six rods south of the northwestern corner, and running southeasterly out beneath the railroad bridge near the southeast corner. The banks of this stream are six or seven feet deep, and ordinarily the water was from six inches to a foot deep, and three or four feet wide at the bottom, which was hard with some gravel. In 1907 the defendant cut willow, ash and brush, and threw these into the creek with butts up stream its entire course through his land, with the exception of about one hundred feet, and later excavated a ditch in a direct line from a point a short distance below the division fence two thousand one hundred feet to near the railroad bridge. To force the water into the ditch he constructed several dams, one of which was immediately below the upper end of the ditch.

About fifteen acres of plaintiff's land east of the creek are cultivated, and ten or twelve acres west of it are used for pasture, and there was a ford just north of the partition fence where his cattle drank and crossed the stream. The effect of the defendant's improvements was to back the water on plaintiff's land, retard its movement, fill the ford with debris and mud several feet deep, so that the cattle could not drink or cross there without danger of miring, and, at times of freshets, to overflow his field and pasture.

The situation is shown on the accompanying map:

Instead of excavating an adequate ditch, the defendant plowed a furrow along the line of the proposed ditch and dug this out, so that it was about eighteen inches deep and eighteen inches wide where he intended to take the water from the stream. The dams and other obstructions held the water back, forcing it through the ditch, and this washed out the ditch gradually, and, of course, mud and debris settled in the bottom of the stream above to the depth of several feet. An engineer testified at the hearing in April, 1909, that the upper end of the ditch was then four feet higher than the old bottom of the channel and one foot higher than the bottom was at that time. An opening in the upper dam was made after the action had been commenced, and, after evidence showing the facts as

recited had been adduced, at the April, 1909, term of court the parties stipulated that the cause be continued over the term, in consideration of which the defendant undertook to "so deepen and widen the ditch, now on said land constructed by him, as that it will furnish an outlet for the flow of the water from the Bramley land and equal to the outlet that was there before any obstructions were placed in the old channel by Mr. Jordan, and Mr. Jordan is given until the first day of August to complete the ditch. Mr. Jordan is not to fill the dam or in any way to lessen its capacity to carry water." The hearing was resumed at the November term of court following, when it was shown that in May defendant had put in a dam about thirty-five rods below the partition fence, and on the 24th day of June had erected a dam immediately below the north end of the ditch; also, he removed two spades of earth from the bottom of the ditch, about three feet, and, as these dams turned the waters into it, the flow deepened and somewhat widened the ditch. But, according to the evidence of several witnesses, the bottom of the ditch was still several feet above the original bottom of the creek. One of these made measurements from which it appeared that the ditch at the mouth was five feet wide at the top, one foot at the bottom, and five feet eight inches deep, and the mud accumulated above five feet four inches deep. In the ditch the water was two and one-half feet deep and three feet wide at the top, while above it the water was from eight inches to a foot deep and seventeen feet wide up to the division fence and about thirteen feet wide beyond. Other witnesses confirmed the accuracy of these measurements, though by estimates. It also appeared that, after the construction of the dams at the time of a freshet, the water backed over plaintiff's pasture, thereby leaving much debris thereon, destroying the feed. The defendant in his testimony conceded that the upper dam may have raised the water six inches or a foot, but this was to turn it into

the ditch, so that in digging he could leave the bottom on an incline. He testified that the ditch as now constructed carried all the water of the stream above, and was adequate to do so when the flow is normal, that at no place is the bottom less than three feet wide, and, in substance, that the level of the creek bottom has not been raised, and that for more than a year all water from its intersection with the ditch about thirty-five rods south of the line had flowed through the ditch. Such, in substance, was the evidence on which the district court based its decree directing the removal of all obstructions in the old channel through defendant's land, save that it was shown that there was a fall of fourteen and five-tenths feet from the mouth to the outlet of the ditch, and that the fall in the course of the stream in plaintiff's land was less than four feet.

There is no dispute but that the ditch from the lower intersection to the railroad bridge is adequate to carry off the water, and for this reason, in so far as the dams at that

<span style="float:left">1. DRAINAGE:<br>diversion of<br>stream: injury<br>to dominant<br>estate: in-<br>junction.</span>

point or below are interfered with, the decree should be modified. But the evidence indicates by a clear preponderance that from there to the north end of the ditch it was inadequate to carry away the water so as to avoid raising the water in the stream on plaintiff's land and injuring it. Manifestly the defendant's design was to so adjust conditions as that an adequate waterway through his land should be excavated in large part by the action of the waters. While this has the merit of being economical from his point of view, he can not be permitted to carry it out if it will result in undue injury to his neighbor. The circumstance that it will reclaim and render tillable many acres on his land, and is in the interest of good husbandry, furnishes no justification for backing the waters on plaintiff's land to its material injury. It is well settled that any swelling of the stream over the line by the construction of dams on the servient estate is an invasion of the rights

of the upper owner, who has the right to the stream in its natural condition. This means that in which the stream is, under the ordinary operation of the physical laws which affect it. This may be different at different seasons of the year, and yet be ordinary by the recurrence of the same condition about the same season each year. *Dorman v. Ames,* 12 Minn. 451 (Gil. 347) ; 2 Farnham on Waters, section 546. The mere raising of the water in the stream on the dominant estate by backing it over the line is a trespass for which the owner may seek redress from the courts, and, according to the weight of authority, it is not necessary to show special injury in order to maintain the action. This is on the theory that the upper proprietor has a right to protect himself from the acquisition of prescriptive rights at least, and that the right is not diminished by the fact that he has no present use for his rights to their full extent. 2 Farnham on Waters, sections 551, 571. But in the case at bar not only the raising of the water above the line was proven, but the filling of the ford with mud and the covering of the pasture with debris, thereby working a direct injury to the land, so that it is not necessary now to inquire whether relief in the absence of injury is available. The contention of appellant to the contrary is against the clear preponderance of the evidence, and it is unnecessary to proceed on the theory either that the improvement was completed, or that it occasioned no injury to plaintiff's land. Undoubtedly the fall was such that the ditch could have been so excavated as to have proven sufficient, but such was not the defendant's purpose. His scheme was to force the water to do this, even though the dams necessary to accomplish his purpose raised the water above the line to the injury of the dominant estate.

The complaint is not as in *Pohlman v. Railway,* 131 Iowa, 89, that by the velocity of the flow the injury was wrought, but that the owner of the servient estate by his

improvements was preventing the water in the stream from leaving the dominant estate at its lowest level. To have it so to do is a corporeal right, a part of the premises. *Scriver v. Smith,* 100 N. Y. 471 (3 N. E. 675, 59 Am. Rep. 224), which the courts will protect. All counsel has said concerning the interests of good husbandry may be conceded, but this is not in point, for the question is not whether defendant may not properly straighten out the watercourse, but whether in doing so he has not interfered with plaintiff's rights by raising the water level in the stream on his land. The evidence quite satisfactorily so shows, and therefore the decree requiring the removal of the obstructions in the old channel from the mouth of the ditch down to its intersection with such channel about thirty-five rods south of the division line has our approval. The decree will be so modified as not to require change in the old channel below such intersection.

2. SAME.

It should be added that, upon a clear showing that the ditch has been so widened and deepened as to be adequate to carry off the water so as not to raise the water level at the line as it was originally, this decree may be modified. Without the aid of a competent engineer, it would seem that, in view of the fall of fourteen and five-tenths feet in so short a distance, the situation might readily be remedied without great expense. Costs will be taxed to appellant.— *Modified* and *affirmed.*