STATE OF IOWA, Appellant, v. HAROLD JOHNSON, Appellee.

INTOXICATING LIQUORS: Nuisance—"Place" Defined. A trench
1 in the ground used as a place for the concealment of intoxicating liquors is a "place," within the meaning of the statute (Sec. 1930, Code of 1924) which punishes the maintenance of an intoxicating liquor nuisance in any "building, erection, or place."

INTOXICATING LIQUORS: Criminal Prosecution—Character of Liq-
2 uors—Prima-Facie Evidence. Testimony by some of the officers making a seizure to the effect that the contents of certain receptacles were, in their opinion, "booze," and by others that it was "alcohol," constitutes prima-facie evidence of the *intoxicating* nature of the liquors in question.

INTOXICATING LIQUORS: Criminal Prosecution—Evidence—Identifi-
3 cation of Liquor Exhibits. The refusal to receive intoxicating liquors in evidence after they have been duly identified as the *identical* liquors seized, may not be justified on the ground that the sheriff (who was not *personally* concerned in the seizure or subsequent custody) carried a key to the room in which the liquors were kept subsequent to the seizure.

INTOXICATING LIQUORS: Nuisance—Responsibility of Accused—
4 Evidence. Defendant's responsibility for an intoxicating liquor nuisance is shown, *prima facie*, by testimony that he sold such liquors on the farm where he lived, and that, without objection, the farm was referred to by the witnesses as defendant's "farm" and defendant's "place," even though there is no evidence that defendant was the owner or lessee of the farm.

Headnote 1: 33 C. J. p. 588. Headnote 2: 33 C. J. p. 774. Headnote 3: 16 C. J. p. 620. Headnote 4: 33 C. J. p. 790 (Anno.)

*Appeal from Kossuth District Court.*—D. F. COYLE, Judge.

JUNE 25, 1925.

THE defendant was charged by indictment with the maintenance of a liquor nuisance. He pleaded not guilty. At the close of the evidence for the State, the defendant's motion for a directed verdict of acquittal was sustained. The State has appealed.—*Reversed.*

*Ben J. Gibson,* Attorney-general, and *W. B. Quarton,* County Attorney, for appellant.

*E. J. Van Ness* and *J. E. Williams,* for appellee.

EVANS, J.—The appeal of the State brings before us for review the ruling of the trial court in directing a verdict of acquittal. The evidence for the State disclosed that certain officials made a search of the farm premises occupied by the defendant, and found thereon, concealed in a trench, six cans of alleged intoxicating liquor, to a total amount of six gallons. This trench was in the near vicinity of defendant's barn. It was dug into the earth three feet deep, and was two feet wide. The cans were placed therein, and were covered over with straw and boards. It was further covered with portions of a manure pile adjacent to the barn. To all appearances, the trench was extended under the manure pile which was adjacent to the barn. The trial court predicated its ruling upon three main grounds:

(1) That the trench was not a "building, erection, or place," within the meaning of the statute.

(2) That the proof was insufficient to justify a finding by the jury that the cans thus discovered contained intoxicating liquor.

(3) That the evidence was insufficient to show that the defendant was in any manner responsible for the presence of the cans of alleged intoxicating liquor upon the premises, in that it was not proved that he was the owner of the farm, and not proved that he was even the renter thereof.

The questions presented for our consideration are those that naturally arise out of the foregoing grounds of decision.

I. The record contains an extended expression of view by the trial court, preceding the ruling. As to the first ground above stated, the holding was that the word "place," as used

1. INTOXICATING
LIQUORS: nui-
sance: "place"
defined.

in the statute, must be construed as the equivalent of the preceding words, "building" and "erection;" and that the trench in question was not a "building" or "erection," and was, therefore, not a "place." In so holding, the trial court did not have before it our very recent pronouncement in *State v. Elliott*, 198 Iowa 71. In that case we said:

"It must be conceded that the business of appellant and his associate was not carried on in a building. An erection admits of a much broader definition. A building is an erection, but an erection is not necessarily a building, within the meaning of the statute. An 'erection' is a structure of any kind, and need not have a roof or covering, or be entirely inclosed. A 'place' is of much broader significance than 'erection.' "

The *place* involved in the cited case is described as "a depression in the ground, a kind of an old bayou, with big horse weeds and grapevines 'very thick surrounding it.' There was no covering over the place, but it 'was kind of built up, had some poles nailed up around there, and a big box there. The barrels were covered with blankets and with a canvas.' "

We held this to be a "place," within the meaning of the statute. The character of the "place," within the meaning of the statute, is created by its suitability and use as a harbor for intoxicating liquors, and not by its appearance or its construction before it became such harbor. It becomes a nuisance, not by reason of what it was before, but by the fact of its use as a covert for intoxicating liquors, there assembled for the purpose of unlawful sale. When a vendor of intoxicating liquors brings his stock in trade to a "place" of *rest* and cover, he thereby creates a center for his unlawful trade. Such a "place" becomes a nuisance, not because of the inherent character of the "place" itself, but because of the character and nature of its occupancy. It is somewhat as though a carcass be deposited at a "place" previously inoffensive. The ensuing odors become an offense to clean olfactories, and yet an attraction to carrion assemblage.

"For wheresoever the carcass is, there will the eagles be gathered together." Matthew 24:28.

Whenever, therefore, a "place" becomes one of assemblage of intoxicating liquors, not in transit, but held there for the purpose of unlawful sale, it thereby becomes, under the law, a "place" of nuisance; and it matters little whether such "place" be a trench in the ground or a lodge in the boughs of a tree. It is enough that stench emanates from it, and that evil assemblage is attracted to it.

II.   The discovery of the cans of liquor was made by Federal Prohibition Agent Wilson, and Deputy Sheriff Hovey. Earlier in the day, one Wagner had been upon the premises and had bought a quart of alleged whisky. He made such purchase through the defendant and one Raymond Wolfe, who was there present. Wagner having proposed to purchase, Johnson went into his residence and obtained a suitable bottle, brought it out, and handed it to Wolfe, who thereupon went to a coal pile 15 feet away, and took therefrom a can from which he filled Wagner's bottle. The filled bottle was delivered by Wolfe to Wagner, and the purchase price of $5.00 was paid to Wolfe. This bottle was delivered to the deputy sheriff, and the same was identified and preserved, and appears in this record as Exhibit A. Upon the later discovery of the six cans, a part of the contents was put into a bottle, and was used for analysis. This bottle was duly identified, and appears in this record as Exhibit B. The cans of liquor and the two bottles were placed in the possession of the deputy sheriff, who thereafter kept the same under lock and key in a certain cell in the county jail, to which no one had access save himself and the sheriff. These bottles and cans, with their contents, were offered in evidence, but were rejected by the court. Disregarding, for the moment, this ruling, we look to the record for evidence of the character of the contents of these receptacles, independent of the exhibits themselves. Wagner testified that he tasted and smelled the contents of his bottle, and that in his opinion it was "booze." The deputy sheriff testified, concerning the cans discovered by him and Wilson, that he "took the caps off a few of them and smelled of them. I figured it was alcohol,—that is, the day we got them."

Wilson testified that he tasted and smelled the contents of

2. INTOXICATING LIQUORS: criminal prosecution: character of liquors: prima-facie evidence.

the Wagner bottle, and that "at that time it contained alcohol." We think the foregoing was, of itself, sufficient to make a prima-facie showing that the contents of these cans were intoxicating liquors. The case of the prosecution at this point was not wholly dependent upon the introduction of the exhibits.

On the question of admissibility of the exhibits, the trial court was of the opinion that the point was ruled by *State v. Phillips,* 118 Iowa 660. We are constrained to say that the

3. INTOXICATING LIQUORS: criminal prosecution: evidence: identification of liquor exhibits.

holding in the *Phillips* case falls short of sustaining the ruling of the trial court. The sheriff was not a witness. The foundation laid for the introduction of the exhibits was lacking in this respect. Was it necessarily fatal? It was shown by the testimony of the deputy sheriff, who was the legal representative of the sheriff, that the exhibits were at all times in his custody as representative of the sheriff, and kept under lock and key in a cell of the county jail, to which no one but himself and the sheriff had keys. Wilson was present with the deputy sheriff when he so placed the exhibits under lock. Wilson was also present with the deputy sheriff when the exhibits were taken from their place of custody, to be produced at the trial. Both testified that, when so taken, they were in the same place and in the same condition as when they were first left there. The sheriff personally had nothing to do with this custody. His only connection with it was that he had an official key to the place. The sheriff's relation to the transaction was purely official. Unless we should hold that it was necessary for the sheriff to make oath as a witness that he had not violated his official oath, then the absence of his testimony was not fatal to the exhibits as instruments of evidence. See *Langhout v. First Nat. Bank,* 191 Iowa 957. The continuous custody of the exhibits was accounted for by the only persons who had such custody in person. The weight and credibility of the evidence of these witnesses were for the jury. We are constrained to hold, therefore, that sufficient foundation was laid for the introduction of these exhibits in evidence. These exhibits being treated as sufficiently identified, the evidence of the alcoholic character of the contents was quite abundant.

III. On the question whether the evidence was sufficient

to show that the defendant owned or was connected or concerned with this place of nuisance, we have already stated the defend-ant Johnson's connection with the sale to Wag-ner. There was no evidence in direct terms that he was the owner of the farm, or that he was a renter of the farm. The ownership and occu-pancy of the farm appear indirectly, rather than directly. It does appear that Johnson lived in a farmhouse upon the farm, which the witnesses called "his farm."

**4. INTOXICATING LIQUORS: nuisance: responsibility of accused: evidence.**

Wagner testified:

"I know where his farm is,—about five miles east of Ban-·croft. I know the farm he lives on. I was there during the month of February this year."

The deputy sheriff testified:

"I remember the 19th day of February when I went out to Johnson's place. The·description of the land where Johnson lived was the northwest quarter of Section 26 in Ramsey Town-ship in this county."

Wilson testified:

"I went out to Harold Johnson's place about five miles east of Bancroft, * * * About the 21st of February, this year, I went to the farm of Harold Johnson. * * * I made ·a search of the buildings and places there at the Johnson farm."

No objection was made at the trial to this form of evidence. In the absence of objection to its form, and in the absence of contradiction, we think it was sufficient to go to the jury on the·question of Johnson's connection with the "place" of nui-sance.

We are, therefore, united in the view that the learned trial court erred in· directing a verdict for the defendant.—*Reversed.*

All the justices concur.