STATE OF IOWA, Appellant, v. MARTIN H. WICKETT, Appellee.

No. 45705.

OCTOBER 21, 1941.

John M. Rankin, Attorney General, Jens Grothe, Assistant

Attorney General, and M. D. Hall, County Attorney, for appellant.

S. E. Prall, for appellee.

BLISS, J.—The defendant, for a number of years preceding November, 1938, operated a bulk station for the sale, on commission, of petroleum products of the Standard Oil Company at the town of New Virginia, in Warren County, Iowa. It is contended by the State that in the year 1938, the defendant turned in to the agency of the Standard Oil Company, at Des Moines, a number of sales tickets showing purported sales of the company's products, on credit, upon which he would receive commissions, when in fact he had made no such sales, and had forged the signatures of the claimed purchasers on the tickets. The indictment on which he was tried involved such an alleged sale to "R. Myers," and the forging of that name upon the ticket.

The defendant alleged six grounds in his motion for a directed verdict, one of them being the insufficiency of the evidence to support a conviction on either count, and particularly the failure to establish by competent evidence that defendant forged the signature on the Myers ticket, Exhibit 2. On the submission of the motion, the court, speaking to the County Attorney, said:

"I don't see where the defendant has been connected with Exhibit '2' in any way. I don't think you showed he had anything to do with the writing of Number '2.' * * * I will sustain the motion for a directed verdict."

The State, on its appeal, has assigned six errors. Three of them are based upon the refusal of the court to receive the opinion testimony of three witnesses as to whether the defendant wrote the name "R. Myers" upon the ticket on which each count of the indictment was based. The fourth assignment is the claimed error of the court in refusing the offer of proof on the part of the State that the witnesses, Duncan and Edwards, would, if permitted, testify that from their knowledge of defendant's handwriting, gained by Duncan from having seen him write several times, and, by Edwards, from having seen him

write on one occasion, which writing was introduced in evidence, the name, in their opinion, was written on the ticket by the defendant.

Assignments of error, five and six, complain of the direction of the verdict for defendant on each count.

The state may appeal from a judgment in a criminal case which is adverse to it. (1939 Code, section 13994.) But there are statutory limitations upon the effect or results of that appeal. Code section 14012 provides that if the state appeals, this court cannot reverse or modify the judgment in favor of the defendant so as to increase the punishment, "but may affirm it, and shall point out any error in the proceedings or in the measure of punishment, and its decision shall be obligatory as law."

Since the defendant was found not guilty by the verdict of the jury, and the charges against him were dismissed, any decision we may make can in no way affect his rights or subject him to further prosecution on the charges for which he was tried. Its effect is merely an authoritative exposition of the law, which may be of service to those charged with crime, the state, the courts and lawyers for their guidance in the administration of the criminal laws, and as a precedent in future cases. Ordinarily on appeals by the state, in a criminal case, from a judgment on a directed verdict for the defendant, involving the sufficiency of the evidence to establish the charge, this court will not review the record to determine the correctness of the decision. A pronouncement of this court on the fact situation in one case could rarely serve any good purpose in the determination of any case in the future. Such appeals by the state are useless. While the matter of the sufficiency or the insufficiency of the evidence is a question of law, this court will refuse to review the record where it will benefit no one. But in many of such cases, the Attorney General has appealed in order to procure the consideration of certain rulings, and the settlement of specified propositions of law. Cases in which the foregoing propositions have been passed upon are State v. Woodruff, 208 Iowa 236, 225 N. W. 254; State v. Little, 210 Iowa 371, 228 N. W. 67; State v. Friend, 213 Iowa 544, 239 N. W. 132; State v. Traas, 230 Iowa 826, 298 N. W. 862; State

v. Meyer, 203 Iowa 694, 213 N. W. 220; State v. Johnson, 157 Iowa 248, 138 N. W. 458; State v. Fairmont Creamery Co., 153 Iowa 702, 133 N. W. 895, 42 L. R. A., N. S., 821; State v. Jackson, 128 Iowa 543, 105 N. W. 51; State v. Keeler, 28 Iowa 551; State v. Ward, 75 Iowa 637, 36 N. W. 765; State v. Miller, 81 Iowa 72, 46 N. W. 751; State v. Gilbert, 138 Iowa 335, 116 N. W. 142; State v. Kulough, 133 N. W. 706, (Iowa), (not reported in Iowa Reports); Town of Scranton v. Hensen, 151 Iowa 221, 130 N. W. 1079; State v. Bell, 242 N. W. 401, (Iowa), (not reported in Iowa Reports); State v. Johnson, 200 Iowa 324, 204 N. W. 273; and State v. Drain, 205 Iowa 581, 218 N. W. 269.

While the court in this case based its direction of a verdict upon the claimed failure of the State to establish matters of fact, the State claims that this failure was caused by errors of law on the part of the court in the rejection of testimony and offers of proof.

■ The first assignment of error is in the rejection of the opinion testimony of the witness, Duncan. This witness had been a salesman for the Standard Oil Company for five years. He was acquainted with defendant since 1937 and had seen him twice a month over a period of about a year. He assisted in auditing his accounts, checking over and making a report of his sales as shown by his books and tickets, in September and November, 1938. The defendant produced his tickets for the purpose of the audit. He testified that he had seen the defendant write several times. He had these tickets before him in the audit.

The County Attorney asked this question, "I call your attention to the words 'R. Myers' on Exhibit '2' and ask you to state whether or not you have any opinion as to whether that is in Mr. Wickett's handwriting?" Defendant's objection to this preliminary question that it called for an opinion and conclusion of the witness, and that the witness was not qualified, was sustained.

The second assignment of error has to do with similar testimony by the witness, Edwards. He was a substation auditor for the Standard Oil Company. He had worked for the company since 1922. His territory covered many counties. His

duties included the auditing of books and stocks, and the checking of sales and receipts. In September and November, 1938, he audited the substation operated by the defendant and checked him out. He made an examination of all sales tickets which the defendant produced from his files. Defendant placed these tickets in two piles before the witnesses, Edwards and Duncan. The defendant told them the tickets in one of the piles were "fictitious." In this pile was Exhibit 2, and also Exhibits 4 and 5, being other tickets which the purported purchaser, named in each, denied signing personally, or by authorization. Exhibit 2 bears date of August 3, 1938. In September, 1938, the witness, Edwards, saw the defendant write out a report of the sales made by him at his station in New Virginia covering nine days of sales from September 1 to September 9, 1938, both days included. It bears the name of the defendant and is on a blank form furnished by the company. It contains the names of more than twenty purchasers and sets out the product sold to each, the number of the ticket, purchase price, tax, etc. Edwards testified to these matters positively and his testimony is not denied. This report, which is Exhibit 10, together with all other exhibits, has been certified to us. He was asked the preliminary question whether, from his knowledge of the defendant's handwriting gained in the manner above stated, he had an opinion that defendant had or had not written the name on Exhibit 2. The same objection to the question was made and the court sustained it. Offer of proof was made as to each of the two witnesses referred to that they would have expressed opinions that defendant signed Exhibit 2.

In the third assignment of error, the State complains of the rejection of opinion testimony offered by M. F. Henderson, the cashier of an Indianola bank for about twenty years. He testified that in the course of his employment, he had occasion to examine specimens of handwriting for the purpose of establishing the identity of the writer. He was asked: "How often do you suppose you have done that?" He replied, "We see signatures all the time." He was then asked: "Do you compare signatures from time to time?" Answer, "Yes, quite a little." He was then handed Exhibit 10, the standard, and Exhibit 2 and asked whether he had an opinion whether the

name "R. Myers" appearing on Exhibit 2 was written by the same person who wrote Exhibit 10. Defendant objected to the question "as calling for the opinion and conclusion of the witness. The witness is not qualified, not shown to be familiar with the handwriting of the defendant." The objection was sustained. The court admitted all of the exhibits, but at once directed a verdict for the defendant so that the jury had no opportunity to make comparisons of any of the handwriting.

It is our judgment that the court erroneously sustained the objections and that the three witnesses should have been permitted to give their opinions on the questioned signature. Section 11278 of the 1939 Code provides:

"Handwriting. Evidence respecting handwriting may be given by experts, by comparison, or by comparison by the jury, with writings of the same person which are proved to be genuine."

This section, in substantially the same language, and with the same meaning, (Murphy v. Murphy, 146 Iowa 255, 125 N. W. 191) has been construed many times by this court. In addition to proof of handwriting by comparison, as provided in the quoted section, evidence may be given by those who saw the questioned signature written, or to whom admission of having written it has been made, or by those who are familiar with the handwriting or signature of the claimed writer by having seen them, or by having seen him write under circumstances where adequate observation could be had. All such witnesses base their opinions upon knowledge of the writer's handwriting or signature. Hyde v. Woolfolk & Bacon, 1 (Clarke) Iowa 159; Murphy v. Murphy, supra (146 Iowa 255, 260); In re Estate of Chismore, 166 Iowa 217, 220, 147 N. W. 297.

The expert witnesses base their opinions upon comparison of the questioned writing with handwriting of the claimed writer. So also do the jurors insofar as their conclusion is based upon observation. The writings or signatures used as standards of comparison, under the statute and our decisions, must be established as the genuine writing of the person in question. This cannot be done by expert testimony, nor by

witnesses testifying from knowledge or familiarity. Testimony that the witness saw that person write the "standard" is sufficient. As stated in Hyde v. Woolfolk & Bacon, supra, at page 162 of 1 Iowa: "Two obvious methods of proving the standard writing, are: first, by the testimony of a witness or witnesses who saw the party write it; and secondly, by the party's admission, when not offered by himself." In the case before us, Exhibit 10 was adequately established as the genuine writing of the defendant, and a proper standard for comparison, by the testimony of Edwards that he saw him write it. Hyde v. Woolfolk & Bacon, supra; State v. Debner, 205 Iowa 25, 29, 215 N. W. 721; State v. Calkins, 73 Iowa 128, 34 N. W. 777; Winch v. Norman, 65 Iowa 186, 21 N. W. 511; Mixer v. Bennett, 70 Iowa 329, 30 N. W. 587; State v. Farrington, 90 Iowa 673, 679, 57 N. W. 606; Sankey v. Cook, 82 Iowa 125, 47 N. W. 1077; Patton v. Lund, 114 Iowa 201, 204, 86 N. W. 296; Buttman v. Christy, 197 Iowa 661, 668, 198 N. W. 314.

The witness, Henderson, while not claiming to be a handwriting expert, in the sense that that was his calling or profession, was nevertheless sufficiently qualified by his work, his intelligence, his experience over a long period of years in examining handwriting and signatures for the purpose of determining the identity of writers, to express an opinion on whether the defendant wrote the signature on Exhibit 2, by comparing it with the writing of defendant on Exhibit 10. We have in other cases held that witnesses with such experience as judges of handwriting were qualified to give opinions as experts under Code section 11278. See Hyde v. Woolfolk & Bacon, supra (1 (Clarke) Iowa 159, 165); Hammond v. Wolf, 78 Iowa 227, 231, 42 N. W. 778; Christman v. Pearson, 100 Iowa 634, 69 N. W. 1055; State v. Farrington, supra (90 Iowa 673, 680); Keeney v. De La Gardee, 212 Iowa 45, 235 N. W. 745. He was competent to give his opinion. As said in Hyde v. Woolfolk & Bacon, supra (1 Iowa 159, 167): "Skill in judging of handwriting is common to men of many callings, although one calling may produce a better expert on this subject than another. Accordingly, an 'expert' is defined to be 'a person instructed by experience.'" The weight of it was for the jury, and it would have had Exhibits 10 and 2 before it to test the opinion by com-

parison. This court has at different times stated that opinion testimony of handwriting experts is of a low order and is not satisfactory, particularly as against direct and unequivocal testimony to the contrary (Borland v. Walrath, 33 Iowa 130; Whitaker v. Parker, 42 Iowa 585; Murphy v. Murphy, supra; Johnston v. Linder, 168 Iowa 441, 143 N. W. 410; Patton v. Lund, supra, 114 Iowa 201, 205; Hammond v. Wolf, 78 Iowa 227, 234, 42 N. W. 778; Browning v. Gosnell, 91 Iowa 448, 59 N. W. 340; Ayrhart v. Wilhelmy, 135 Iowa 290, 112 N. W. 782; and other cases), except under such circumstances and conditions mentioned in Keeney v. De La Gardee, supra (212 Iowa 45, 53, and Brien v. Davidson, 225 Iowa 595, 600, 281 N. W. 150). But even if we concede it to be of that character, without deciding or redeclaring that it is not of the highest value, yet it does have probative force under section 11278 (State v. Manly, 211 Iowa 1043, 1048, 233 N. W. 110), and is in the record for what it is worth. (Hammond v. Wolf, supra, 78 Iowa 227, 234.)

The trial court was in error in holding that Henderson was not qualified. It was also in error in refusing to permit the witnesses, Duncan and Edwards, to express their opinion, under our decisions in Egan v. Murray, 80 Iowa 180, 45 N. W. 563; State v. Farrington, supra (90 Iowa 673, 677, 57 N. W. 606, 607); Hyde v. Woolfolk & Bacon, supra (1 Iowa 159, 167); McColl v. Jordan, 200 Iowa 961, 205 N. W. 838; and Frank v. Berry, 128 Iowa 223, 103 N. W. 358. In State v. Farrington, supra, the court in speaking of a layman witness, who "was somewhat acquainted with his [defendant's] handwriting, having seen him write", said at page 678 of 90 Iowa, page 607 of 57 N. W.:

"In Hyde v. Woolfolk, 1 Iowa, [159] 167, it is held that in such cases the competency of a witness as an expert does not depend upon his having followed a particular calling, but rather 'on his means of knowledge as a business man, and his intelligence.' Every fact necessary to be established in the first instance to show his competency had been shown. It is now almost the universal rule that one who has seen a party write is competent to give an opinion as to the genuineness of his signature, in a proper case."

In Frank v. Berry, supra (128 Iowa 223, 224, 103 N. W. 358, 359), complaint was made because of the admission of opinion testimony of the plaintiff. The court said: "As he had seen the defendant write a receipt and sign his name in a subscription book, the ruling was correct."

The reason given by the trial court for directing the verdict was that the State had not connected the defendant with Exhibit 2. It was in his possession and part of the records of his station. He took it from his files and delivered it to Duncan and Edwards who were auditing his office and told them it was fictitious and no good. The purpose of the excluded testimony was to further connect him with it by showing that he had placed the alleged purchaser's name upon it.

The admission of Exhibits 10 and 2 in evidence might have been sufficient basis for a verdict of guilty had the jury found from a comparison of the handwriting on them that the defendant wrote them both.

The judgment of the District Court discharging the defendant must remain, but its action in sustaining the objections to the admission of the opinion testimony, and in directing a verdict for the defendant is reversed.—Reversed.

MILLER, C. J., and STIGER, SAGER, OLIVER, HALE, WENNERSTRUM, and GARFIELD, JJ., concur.