CHRISTY A. NELSON et al., appellants, v. WILLIAM NELSON et al., appellees.

No. 49383.

(Reported in 87 N.W.2d 767)

FEBRUARY 11, 1958.

Jones, Cambridge & Carl, of Atlantic, for appellants.

F. A. Royal of Royal & Royal, of Des Moines, for appellees.

GARFIELD, J.—John P. Andersen, a resident of Cass County, Iowa, died September 9, 1950, intestate, unmarried, childless, and predeceased by his parents. (The name is sometimes spelled "Anderson" in the record.) Appellants, who are heirs through his predeceased mother, claim there are no heirs through his predeceased father and therefore they are sole heirs of the intestate. Following trial it was held certain Danish Nationals are heirs through the predeceased father and as such are entitled to half his estate.

It is conceded the intestate was the son of Niels P. Andersen who was born December 29, 1830, in Denmark and died in Cass County March 24, 1912. Appellees claim through one Niels Andersen, born December 29, 1830, in Denmark. The controlling question is whether the Niels Andersen through whom appellees claim is the same person as the Niels P. Andersen who was father of the intestate. The trial court found such identity was shown.

While our review is de novo (rule 334, Rules of Civil Procedure), we give weight to the trial court's finding. Groves v. Groves, 248 Iowa 682, 692, 82 N.W.2d 124, 130, and citations. When this is done we must reach the same conclusion and affirm the decree. Indeed no other decision may fairly be made.

Appellees offered in evidence a waiver, written and signed

by the Niels Andersen through whom they claim, of any share in the Danish estate of his mother. It is dated September 25, 1874, and headed "Atlautig." The intestate and his father lived in or near Atlantic, county seat of Cass County. The file in the estate just referred to lists one of the heirs as Niels Andersen "in America." Appellees also offered three papers signed by the Niels Andersen who was father of the intestate: his application for citizenship in 1884 which recites he was a subject of Denmark, his will made in 1901, and a deed made by him in 1909.

A handwriting expert of 14 years experience with the federal (three years) and state (11 years) bureaus of investigation testified he had previously examined and made photographic enlargements of the four signatures above referred to and they were all made by the same person. Also that the body of the waiver was written by the person who signed the four documents. The witness, M. D. Huffman, explained in detail how he reached these conclusions. He was extensively cross-examined.

The reasons given in support of Huffman's conclusions are quite persuasive. The facts shown in support of the conclusions must be deemed substantive evidence rather than mere expert opinion. Keeney v. Arp De La Gardee (Evans, J.), 212 Iowa 45, 53, 235 N.W. 745, 749; Brien v. Davidson, 225 Iowa 595, 600, 281 N.W. 150, 282 N.W. 480. See also State v. Wickett, 230 Iowa 1182, 1190, 300 N.W. 268, 272.

A photostat of the waiver, the original will and deed, and the photographic enlargement of the four signatures have been certified to us. Our own comparison of the signatures leads to no disagreement with Huffman's conclusion. No other handwriting expert testified. No evidence refutes that of Huffman.

Appellees also offered a news account printed in the Atlantic newspaper of the death of Niels P. Andersen, father of the intestate, the day following such death in 1912. It states he was well known and respected all over the county and was of a family of several children but, except for one brother in Denmark, he was the last of the family. Other evidence shows the Niels Andersen through whom appellees claim was fifth in a family of six children, only one of whom (Anders) survived Niels.

Appellees also offered an affidavit of one of their number,

a granddaughter of Anders, that she remembered her grandfather received money at Christmas from his brother Niels in America prior to World War I but these gifts stopped shortly before that war. Attached to the affidavit is a photograph of the Niels P. Andersen who was father of the intestate, found among the latter's effects when he died. The affidavit states the affiant had seen the photograph prior to any investigation of the matter in controversy but does not know who it portrays.

Six of the appellants were the only witnesses in their behalf. All are cousins and heirs of the intestate through his mother. One said he heard his (witness') parents say there were no known relatives of Niels Andersen. Another, age 82, testified that about 28 years before the trial, the intestate told him he had tried to find "relation" on his father's side in Denmark through the Danish consul in Chicago who said he could not find any. Another testified to a like conversation with the intestate 31 years before the trial. Proper objection to the competency of this witness to give such testimony under section 622.4, Code, 1954, the dead man statute, was made and the evidence of this witness must be disregarded. Another appellant said Niels P. Andersen could not read and therefore she did not suppose he could write although he could probably sign his name. (It is admitted he signed the application for citizenship, will and deed before referred to.)

Principal witness for appellants was Andrew C. Nelson, a cousin and heir, age 79. He told of a conversation in 1885, when he was nine, in which he took no part, between Niels P. Andersen and the witness' father, a brother of Niels' wife, in which Niels told of signing a waiver to his share of his mother's estate in Denmark. This part of Andrew's testimony definitely tends to corroborate the handwriting expert and strengthen appellees' claim.

Andrew also testified that many times, "I couldn't tell exactly where and when", he heard Niels' wife say, sometimes in Niels' presence, he was an illegitimate child and Niels made no denial of the statements. On cross-examination this witness said most of the things he testified to took place in the one conversation in 1885. The witness had not lived in Atlantic or vicinity since about 1898. No other appellant or witness testified

in support of this claimed illegitimacy although it would seem others would know at least as much about the matter as Andrew.

The above is a sufficient indication of the evidence. As stated, the only witnesses for appellants were appellants themselves, with a large financial interest in the outcome. The bulk of their testimony relates to oral statements of persons long since deceased. We have repeatedly held such evidence should be closely scrutinized and cautiously received because it is not susceptible of denial and the witnesses may not have been capable or desirous of accurately relating what the deceased person may have said. Roth v. Headlee, 238 Iowa 1340, 1345, 29 N.W.2d 923, 925, and citations. See also Byers v. Byers, 242 Iowa 391, 404–406, 46 N.W.2d 800, 807, 808, and citations; 32 C. J. S., Evidence, section 1048 ("Testimony of interested parties to oral declarations of persons long since dead is regarded with suspicion * * *.").

It is doubtless true, as appellants suggest, that in matters of pedigree and family history evidence is generally admissible of declarations of deceased members of the family or others likely to know the facts who were without apparent motive to misstate them. In re Estate of Frey, 207 Iowa 1229, 1233–35, 224 N.W. 597, and citations; In re Estate of Conner, 240 Iowa 479, 484, 36 N.W.2d 833, 836, 837, and citations. See also annotation 15 A. L. R.2d 1412; 31 C. J. S., Evidence, section 228; 20 Am. Jur., Evidence, section 471. So the admissibility of appellants' testimony may be conceded. But we think it does not outweigh that offered by appellees in support of their claim.

In considering the evidence of claimed illegitimacy of Niels, we may observe that until the contrary is shown, it is presumed every person is legitimate, and the burden of proof rests on the party claiming illegitimacy. It has been held proof of illegitimacy must be clear, strong and satisfactory. Orthwein v. Thomas, 127 Ill. 554, 562, 21 N.E. 430, 432, 4 L. R. A. 434, 11 Am. St. Rep. 159; Raymond v. Lowe, 327 Ill. App. 614, 65 N.E.2d 35, 37; In re Estate of Matthews, 153 N. Y. 443, 47 N.E. 901; 7 Am. Jur., Bastards, section 13; 10 C. J. S., Bastards, section 3.

Much of what is said in the decisions last cited might well be repeated here. The presumption just referred to is not dependent upon actual proof of birth during lawful wedlock. It

is based upon broad principles of natural justice, the supposed virtue of the mother, and the probability of morality rather than immorality. It is akin to the presumption of innocence. See authorities last above and, as somewhat analogous, Gammelgaard v. Gammelgaard, 247 Iowa 979, 981, 982, 77 N.W.2d 479, 480, 481.

■ The contention most strongly urged by appellants is that evidence by experts respecting handwriting is of the lowest order or of the most unsatisfactory character. It is true some of our earlier decisions thus characterize the opinions of experts on handwriting. Borland v. Walrath (1871), 33 Iowa 130, 133, and Whitaker v. Parker (1876), 42 Iowa 585, 586, 587, are the principal precedents referred to. Similar statements in some later cases are made largely on the authority of one or both of the opinions just cited.

In the Borland and Whitaker cases the alleged maker of the instrument positively denied the questioned signature and was corroborated by other evidence. Neither decision discloses the qualifications of the experts to express an opinion regarding the signature in question nor the clearness with which they demonstrated the correctness of such opinion. Further, it is well known that the science of comparing handwriting by microscopic study of enlarged photographs and otherwise is much further advanced today than it was 80 years ago. We recognized this advance in Keeney v. Arp De La Gardee, 212 Iowa 45, 53, 235 N.W. 745, 749, and Brien v. Davidson, 225 Iowa 595, 600, 281 N.W. 150, 282 N.W. 480, both supra. See also State v. Wickett, supra, 230 Iowa 1182, 1190, 300 N.W. 268, 272.

For all the reasons just suggested it may not be said the testimony of Huffman is of the lowest order or the most unsatisfactory character.

Cousin v. Cousin, 8 Cir., Iowa, 192 F.2d 377, fully and carefully reviews the Iowa precedents, commencing with Borland v. Walrath and Whitaker v. Parker, both supra, upon the weight to be accorded opinions of experts on handwriting. It concludes such review by referring (page 383) to "the changed attitude of the Iowa courts to expert testimony, in the light of the development of the art of scientific examination of signatures. * * * one of the reasons for the low opinion of handwriting experts'

testimony expressed in the early cases was the fact that in the early days of the handwriting experts, their opinion was not fortified by or with modern methods of examination and comparisons but consisted almost entirely of the bare statement of the expert's opinion that the signature was genuine or not genuine, * * *."

As we have frequently pointed out, section 622.25, Code, 1954, provides: "Evidence respecting handwriting may be given by experts, by comparison * * * with writings of the same person which are proved to be genuine." It will not do to disparage all such evidence nor that given by Huffman here. See in this connection Lindeken v. Lowden, 229 Iowa 645, 659, 295 N.W. 112, 119, 120.

The authorities seem generally to agree that the weight to be given opinions of handwriting experts depends largely upon the clearness with which they demonstrate the correctness of such opinions. This, we think, is the proper view. See Brien v. Davidson, supra, 225 Iowa 595, 601, 602, 281 N.W. 150, 282 N.W. 480; VII Wigmore on Evidence, Third Ed., section 2014; Jones Commentaries on Evidence, Second Ed., section 1307; 32 C. J. S., Evidence, section 621; 20 Am. Jur., Evidence, section 843.

We have here clear proof of identity of name of the ancestor through whom appellees claim and the father of the intestate. We have said this is prima-facie evidence in a civil case of identity of person. Des Moines Savings Bank v. Kennedy (Ladd, J.), 142 Iowa 272, 276, 120 N.W. 742. At least it is some evidence thereof. IX Wigmore on Evidence, Third Ed., section 2529. We also have definite evidence of birth on the same date in Denmark and that appellees' ancestor came to America. The effect of the handwriting expert's testimony, which is not refuted, is that appellees' ancestor and the intestate's father were one and the same. Persuasive reasons are given for this conclusion and it is corroborated by some other facts and circumstances, including part of the testimony of appellants' principal witness. Most of the evidence offered by appellants is not susceptible of denial. It must be closely scrutinized and cautiously received. The decree appealed from is—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.