MARIA CHRISTY et al., Appellants, v. MARGARET BUTTMAN et al., Appellees.

WILLS: Validity—Undue Influence. Undue influence in the execution of a will may not be predicated solely on the facts (1) that the scrivener of the will was the confidential adviser of the testator, and (2) that the wife of the scrivener was one of the principal beneficiaries.

*Appeal from Mills District Court.*—G. W. CULLISON, Judge.

SEPTEMBER 19, 1922.

THIS action is a will contest, tried to a jury. The instrument offered for probate was signed by Retta C. Angell, and properly witnessed. The will was offered for probate by Maria Christy and Catherine Hurlbutt, proponents, two of the lega-

tees named in the will. C. B. Christy, husband of Maria Christy, was by the will nominated as executor. The contestants are Margaret Buttman, Donald Cunningham, Michael Cunningham, Ethel Hume, and Marshall Cunningham, nephews and nieces of testatrix. Proponents are sisters of testatrix. The sole issue submitted to the jury was a question of undue influence, and the verdict returned consisted of answers to the two following interrogatories:

"Interrogatory 1. Was the execution of the will in question obtained from Retta C. Angell by the undue influence of C. B. Christy? A. Yes.

"Interrogatory 2. Was the will in question executed by Retta C. Angell of her own free will, and her property disposed of thereby as she desired? A. No."

Motion by proponents, appellants, to set aside the verdict and for a new trial, was overruled, and judgment entered on the verdict in favor of contestants. Proponents appeal.—*Reversed and remanded.*

*W. S. Lewis* and *D. E. Whitfield,* for appellants.

*Genung & Genung* and *Cook, Cook & Cook,* for appellees.

ARTHUR, J.—It is the claim of contestants, appellees here, that C. B. Christy, who had the will in question written, and who had possession of the same immediately after the death of Mrs. Angell, was, at the time and long prior thereto, the banker, brother-in-law, and confidential adviser of testatrix, and that he, by undue influence, induced her to execute said will, making his wife, Mrs. C. B. Christy, and Mrs. Catherine Hurlbutt, sisters of testatrix, residuary legatees. These allegations present the only issue of fact presented to the jury.

One of the principal grounds relied upon by appellants for reversal is that the verdict is not supported by and is contrary to the evidence, and that the court erred in not directing a verdict for proponents at the close of contestants' evidence, upon proponents' motion.

The only important and controlling question in the case is: Was there sufficient evidence to go to the jury on the question

of undue influence? Concededly, there is no direct evidence of such undue influence. The reliance of appellees is wholly upon circumstantial evidence, which consists of substantially one circumstance: namely, that C. B. Christy, who formulated the will, occupied a fiduciary relation towards the testatrix, and that his wife was one of the principal beneficiaries.

The testatrix, Mrs. Angell, was a widow, without direct heirs. Her husband and her only child had died more than 40 years before. From the time of her bereavement until her death, she had lived in the town of Malvern, as a near neighbor to her sister, Mrs. Christy, and to her brother, Patrick Cunningham, who died shortly before the will was made, leaving the contestants herein as his only heirs at law. Mrs. Angell lived in affectionate relations both with her sister and her brother. She had one other sister, Mrs. Hurlbutt, who lived in Wyoming, and with whom she maintained correspondence. It is undisputed that she was an intelligent, self-reliant woman, who understood her own business and transacted the same, in the main, throughout her life. She lived alone, in her own home, comfortably and neatly, always doing her own work, without apparent hardship, even to the caring for her own furnace; and this continued up to the day of her sudden death, at the age of about 76 years.

The will under attack provided for two legacies of $1,000 each, to grandchildren of her brother. It also provided for a life annuity of $300 a year to a sister-in-law, resident in Massachusetts. The remainder of the estate was divided equally between her two surviving sisters, Mrs. Christy and Mrs. Hurlbutt. Her property consisted of somewhat more than $11,000 of personalty, in the form of bonds and cash, and a quarter-section farm, which was traversed by a railroad, and diminished in its acreage by six or seven acres, and estimated to be of an approximate value of $250 an acre. C. B. Christy, the husband of Mrs. Christy, was a banker in the town of Malvern, with whom Mrs. Angell had always done her banking. Her farm had been rented to the same tenant for sixteen years, sometimes for cash and sometimes for grain rent. Christy had always aided her in the matter of renting this land, as well as in marketing her grain share of rent. The family relations beween them were cordial,

and the personal kindness of Christy in extending aid was always recognized. This is the general nature of the fiduciary relation upon which the contestants rely as sufficient to go to the jury. Christy was instrumental in the formulation of the will. He dictated to a stenographer the will which was afterwards executed by the testatrix. He received from the stenographer the written draft. He was not permitted to testify to what he did with it, nor to any other circumstance that involved personal transactions between him and the testatrix. The undisputed testimony, however, does show that Mrs. Angell herself, some days later, brought the will to the bank, and awaited for some time an opportunity to execute the same; that it was then and there duly executed, and duly witnessed by witnesses selected by Mrs. Angell, who were personally requested by her to sign the same as witnesses. Christy was not instrumental in the actual execution of the will. It does appear that the eyesight of Mrs. Angell was impaired, and that she could read only with great difficulty. The same infirmity made it difficult also for her to sign her name. Her mental capacity is virtually unchallenged by any testimony, and the court withdrew from the consideration of the jury the issue of mental capacity.

The only other evidence apparently relied upon by appellees consisted of alleged admissions made by Christy, some years prior to the execution of the will, to the effect that he had tried to induce Mrs. Angell to make a will, and that she had refused. This evidence was received over appropriate objection. Needless to say that evidence of such admissions was not admissible as against the beneficiaries of the will; and if it were admissible, it is without any substantial significance.

The question before us, therefore, as already indicated, is the narrow one whether the alleged fiduciary relation already described was sufficient of itself to support a verdict finding undue influence. It seems to us too clear for argument that it was not. It is well settled in our cases that the existence of fiduciary relations does not, of itself, carry any presumption of undue influence, though it is always a proper circumstance to be considered in connection with other circumstances, if any.

It is to be remembered also that a distinction must be ob-

served in weighing the circumstance of a fiduciary relation in cases involving transactions of purchase or gift *inter vivos,* and in cases involving the relations between a testator and his legatees. In other words, legatees are ordinarily, if not usually, persons who sustain close and confidential relations to the testator, by reason of ties of blood. Where the legatees are strangers in blood, the weight of the circumstance of a fiduciary relation is naturally increased thereby. Where the legatee is so related in blood as to be one of the legal heirs of the testator if he were to die intestate, the weight of the circumstance, standing alone, becomes quite negligible.

Appellees rely in their briefs on such cases as *Haman v. Preston,* 186 Iowa 1292; *Graham v. Courtright,* 180 Iowa 394; *Liddle v. Salter,* 180 Iowa 840. These are all cases where the legatee was a stranger in blood, and could have taken nothing under the law, in the absence of a will. In the *Graham* case, the legatee was attorney for the testatrix, and drew her will. We held that even that, of itself, was not sufficient to go to the jury on the question of undue influence. The additional and deciding circumstance was stated as follows:

"But her fortune did not exceed in value $25,000, and the bequest to appellant was one fifth of this amount, and, as he was a stranger in blood, and prepared the will, proof of these facts was sufficient to carry the case to the jury. The strength of the inference to be drawn from such a situation depends on the facts of each particular case."

The aid given by Christy in the preparation of the will before us was entirely consistent with his past business relations with Mrs. Angell. It was natural and consistent that she should have sought his aid in that respect, unless she contemplated provisions in her will unfavorable to her sister, Mrs. Christy. Christy himself was not a beneficiary of the will. True, the fact that his wife was a beneficiary could operate upon him as a motive. But Mrs. Christy was one of the natural recipients of her sister's testamentary bounty. If no will had been made, she would take, as an heir, one third of the estate. She and Mrs. Hurlbutt comprised the nearest surviving blood relatives of the testatrix. They were provided for in the will with absolute equality. Mrs. Christy obtained no preference over the

other sister. According to the computations of appellees, these sisters would have received about $20,000 each, in the event that no will had been made. It is also claimed that by the terms of the will they will receive about $25,000 each in value. When it is considered that the bulk of the property devised consists of a single farm, naturally incapable of a complex division, the alleged difference between what each received under the will and what she would have received without it is not very significant on the question of undue influence. It will not do to say that, where a testator of sound mind devises the residue of his estate equally between those that are nearest in blood, a jury issue of undue influence may be made by a mere showing that some of the legatees, or their husbands or wives, while sustaining fiduciary relations to the testatrix, gave assistance in the preparation of the will. The legatees in such a case, almost of necessity, would sustain to some extent fiduciary, confidential, and affectionate relations to the testator. We are constrained to say, therefore, that, in the case at bar, the evidence for the contestants was wholly insufficient as proof of undue influence, within the meaning of the law.

Our conclusion at this point renders it unnecessary that we consider other assignments of error relating to instructions and to the admission of evidence.

For the reason here indicated, the judgment entered below must be reversed.—*Reversed and remanded.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.