MYRTLE W. KEENEY et al., Appellees, v. MATILDA A. ARP DE LA GARDEE, Defendant; A. L. WHITE, Appellant.

No. 40707.

46

APRIL 10, 1931.

*Slason & Knoepfler* and *Cory & Sackett*, for appellant.

*Heald & Heald* and *Cornwall & Cornwall*, for appellees.

EVANS, J.—Prior to May 5, 1920, the payee, Joseph Arp, and the maker, Matilda Arp, were husband and wife, residing at Sioux City for many years. They also owned a summer cottage at Lake Okoboji, in Dickinson County. Shortly prior to May 5, 1920, Matilda instituted an action for divorce in Dickinson County. Her action was not contested by her husband, Joseph. The evidence tends to show that the giving of these notes was an incident to the divorce action. Evidence tends to show that the defendant, White, was an intimate friend of the family, and that he had interested himself to some extent in the divorce proceeding, and had acted to some extent as the advisor of Mrs. Arp. Though her action was prosecuted in Dickinson County, her petition was prepared in Sioux City, by someone undisclosed in this record. Her petition was verified before White, as a notary public. Joseph Arp died in February, 1921. These notes were among his effects. The plaintiffs were his two daughters and his only heirs at law. They brought this action as such. The plaintiffs produced no witness who saw the defendant sign the notes. Each of them testified that they had had conversations with White about the note after the death of their father, on different dates, and that he had assured them that he would pay the same. These conversations were denied by White. The testimony offered by plaintiffs in support of the genuineness of the signature consisted in part of these conversations. The plaintiffs also testified as witnesses, that they knew the signature and handwriting of the defendant, and recognized the same upon the notes in suit. Four purported experts, consisting of bankers, were examined as witnesses, and, basing their opinions upon a comparison of the purported signatures with certain admitted signatures of the defendant's, all testified in support of the genuineness of the signature. As against this testimony, the defendant denied the signature. In corroboration of his denial he produced several purported experts, who testified to their opinion, based upon comparison with admitted signatures, that the signature was not genuine. Such is the general nature of the conflicting evidence.

Aside from a general discussion of the merits of the case as

48

a whole, the defendant presents for our consideration three assignments of error.

I. The first one is predicated upon an alleged abridgment of his right of cross-examination. One of the expert witnesses examined by the plaintiffs was O'Brien, a  banker. He was cross-examined. The basis of appellant's complaint may be better indicated by setting forth a part of the cross-examination of this witness, including the interrogatories to which objection was sustained, as follows:

"When a check is presented at the bank, there is an examination made of the signature, in case it does not appear genuine. Yes, sir, someone passes almost automatically on every signature, if there is any question. There is generally one certain person in charge of those things, and if there is any question about it, then it is referred to the higher officers. When a check is presented, someone must see and examine the signature. Once in a while I do it myself. That duty usually devolves on one of the tellers. I do not think I would pay out money on handwriting alone. We would know whether the man had the money or not, for the first thing. If he had a deposit, whether I would pay out on handwriting alone would depend whether there was sufficient funds to cover his check. If he had the funds, it would depend on who was presenting the check.

"Q. Assuming that I have been a depositor in your bank for some years, so you are familiar with my signature, and a stranger came in with a check which, in your opinion, bore my signature, and it was payable to bearer, would you honor it?

"Mr. Heald: That is objected to as not proper cross-examination, and incompetent, irrelevant, and immaterial and argumentative. It seems to me it is going too far. It is not preliminary to anything else.

"The Court: I will sustain the objection. (Defendant excepts.)

"Q. If, in your institutions, there was a question with reference to a signature on a $5,000 check, would you attempt to pass on that yourself? A. No. Q. What would you do? A. Take it up with the other officers. Q. If the depositor was denying his signature, and you thought it was his signature, and it was a question of changing it back to his account, would you

go any further than taking it up with the other officers of your bank?

"Mr. Cornwall: Objected to as incompetent, irrelevant, and immaterial, and not proper cross-examination,

"The Court: I think he should be confined to what he has done, for the purpose of testing his qualification.

"The defendant excepts."

It will be noted that objections were sustained successively to the three questions above set forth. The contention for the appellant is that he had an absolute right of cross-examination, and that the court had no discretion of limitation upon him. We think the appellant claims too much. It is true that the field of cross-examination is very broad, and that the right of cross-examination is fundamental. It is not true, however, that the right of cross-examination is not subject to any objection. The exercise of the right may be devoted to a test of the credibility, qualification, competency, accuracy, or the mental attitude or bias of the witness. If it appears, therefore, that the attempted examination is not pertinent to any legitimate purpose of cross-examination, it becomes subject to objection and to the discretion of the court, like any other offer of evidence. It is manifest upon the face of the examination here attempted that it could not serve any legitimate purpose of a cross-examination. We can conceive of no answer which might have been given by the witness to the questions put, which could have served any such purpose. Let us suppose that the witness had answered "yes" or "no," or "I do not know." Which answer would have served the cause of the defendant best or worst? We deem it plain that the attempted cross-examination was so far afield as to justify the ruling of the court. The foregoing is a sufficient indication of our views upon another complaint of the same kind, in connection with the testimony of the witness Anderson.

II. The second claim of error is predicated upon alleged misconduct of opposing counsel. A brief excerpt from the record will suffice to indicate the nature of defendant's grievance. The witness Avery had testified to his opinion, as an expert, in favor of the plaintiffs. The following was a part of his cross-examination:

"I wish you would examine the letter A, on Exhibit C, the note, and tell the jury whether

there appears to have been any breaks in the writing of that letter.

"Mr. George A. Heald: If the court please, we object to this, because that is not a question for cross-examination. It is as visible for the jury to examine it as it is for the witness.

"Mr. Knoepfler: A layman or expert testifies as to things that are absolutely obvious to the jury or to anyone else. It looks that way —

"Mr. Heald: You don't pretend that the witness can see some things here that the jury can't see, do you, or can see what your expert here can't see? It seems to me, if the court please, that where it is so obvious,—if the line don't run straight up and down,—it is not a subject for expert testimony,—if it runs at an angle,—the jury can see it, as well as the witness.

"The Court: It would be my thought that they would have a right to go into this for the purpose of testing the testimony of the witness as to the fact that the two signatures are alike,— that is, point out the differences. I think he would have that right, to go that far.

"The Court: I will overrule the objection."

A similar objection was made later by plaintiffs' counsel, and the debate was renewed. The complaint of the appellant is that this persistent debate in the presence of the jury was prejudicial to him. It will be noted that the cross-examination directed attention to the characteristics of the very signature that was under consideration. It was clearly proper, and the court so ruled. It may be conceded that the persistency of plaintiff's counsel in his objection was not warranted, but it availed him nothing. If it could be said that this discussion was persisted in for the ulterior purpose of acquainting the jury with some fact not otherwise admissible, a question of prejudice might properly be raised. There was nothing of that kind. The burden of the discussion on the part of plaintiffs' counsel was that the characteristics of the signature were apparent to the jury. We discover nothing therein which would tend to influence the jury unfavorably to the defendant.

III. The defendant complains of Instruction 8, given by the court to the jury, as follows:

"Our statute provides that evidence respecting handwriting

may be given by experts by comparison, or by comparison by the jury, with writings of the same person which are proved to be  genuine. Evidence of this character has been introduced upon this trial, and it is proper for the jury to carefully consider the testimony of the witnesses and to say how much weight shall be given to such testimony, taking into consideration the amount of experience, knowledge, and skill possessed by the witness about the matter concerning which their opinion has been given. But, while it is proper to consider such evidence, and it is proper to remark that it is the lowest order of evidence, or evidence of the most unsatisfactory character, being, in fact, the result only of a comparison of the controverted with the genuine signature of the defendant, and is less satisfactory in character than is positive testimony, and such as ought not overthrow the positive and direct testimony of a credible witness who testifies from personal knowledge, but it is most useful in cases of conflict between witnesses, as corroborating testimony. However, upon this question you will compare the signatures in dispute with the writing of the defendant which is proved to be genuine, and in considering this question and doing this, you may, and should, use your own judgment, from comparison of such admitted signatures with the ones in controversy, in determining whether or not the defendant A. L. White actually signed the notes sued on; and it is your duty and privilege to give your own comparison and knowledge gained from such comparison such weight as you think it entitled to, in connection with the other evidence introduced upon the trial upon this question.''

The complaint is that the instruction was hostile to expert testimony and to the weight to be given thereto; that the defendant relied upon the expert testimony of the witness Shane, and that said expert witness was one of high qualification, and that the instruction was prejudicial to the defendant, in that it belittled the weight of such testimony. To this complaint the record affords a twofold answer. First, the plaintiffs relied upon expert testimony to establish the genuineness of defendant's signature. The defendant himself formulated an instruction on that subject, and requested the court to give the same. Instruc-

tion 8 was the response of the court to such request. The instruction requested by the defendant was as follows:

"Certain witnesses have testified before you as to their opinion respecting the genuineness of the alleged signatures of the defendant A. L. White to the two promissory notes sued on, Exhibits B and C, introduced in evidence in this case; and it will be proper for the jury to carefully consider the testimony of the said witnesses and to give it such weight and value as it is justly entitled to, taking into account the experience and knowledge of the respective witnesses about the matter concerning which their opinion has been given. But it is proper here to observe that, evidence of this character being, in fact, the result only of a comparison of the controverted signatures with the genuine signatures of the said defendant, it is regarded by the law as less satisfactory than positive testimony, and such as ought not to overthrow positive and direct testimony of a credible witness who testified from personal knowledge, and it is most useful in cases of conflict between witnesses, as corroborating testimony."

The record discloses that the defendant himself was the only witness who gave positive evidence as to the genuineness of his signature. He denied the same. It is manifest that the instruction requested by the defendant was intended by him to be hostile to expert evidence, as compared with positive evidence. He got the full benefit of the contrast by Instruction 8. The instruction requested by the defendant and that given by the court are substantially equivalent. The only difference in verbiage was that Instruction 8 advised the jury that such evidence was of the "lowest order" and "the most unsatisfactory." The language thus used in the instruction given conformed to the previous holdings of this court. The instruction given was in literal conformity to one given in Whitaker v. Parker, 42 Iowa 585, 586, and approved by this court on appeal. Its correctness has been uniformly held ever since. Hammond v. Wolf, 78 Iowa 227. The defendant availed himself of this rule in his requested instruction, even though he did not conform literally to our holding in the cited case. But his requested instruction was intended to fortify the positive evidence of himself as a witness. The requested instruction, if it had been literally given in the form

requested, would necessarily operate against the weight of such expert testimony, as compared with positive evidence. The defendant got the full benefit of this objective. Either instruction necessarily operated alike upon all the expert testimony, whether produced by one side or by the other. Obedient  to our previous decisions, we find no error in the instruction given. Nor, were it otherwise, is the defendant in a position to complain of an instruction which he clearly invited.

By our foregoing pronouncement we are not to be understood as holding that the rule set forth in Instruction 8 is to be applied unqualifiedly to all forms of expert opinion evidence in forgery cases. We are. not unmindful of the  fact that, since our original pronouncement in the Whitaker case, 42 Iowa 586, much progress has been made in the means and methods of detecting forgeries. By microscopic inspection and by magnified photographs and sometimes by chemical tests, the expert may be able to discover and to demonstrate the existence of facts which negative the genuineness of the signature. Such facts, when proved, become substantive evidence, rather than mere expert opinion. How far, if at all, the pronouncement in Instruction 8 should be applied or qualified in such case we have no occasion now to decide. Nor do we foreclose such question. It is not involved in this record. No other errors are presented for our consideration.

The judgment below is, accordingly,—*Affirmed.*

FAVILLE, C. J., and STEVENS, ALBERT, MORLING, WAGNER, and GRIMM, JJ., concur.

KINDIG, J., not participating.