IN RE ESTATE OF GEORGE BAKER WOOD.

EVA M. WOOD, Appellant, v. EMILY WINIFRED WOOD, Appellee.

No. 40846.

JUNE 20, 1931.

REHEARING DENIED OCTOBER 31, 1931.

Naglestad, Pizey & Johnson and J. M. Parsons, for appellant.

R. B. Pike and Larned F. Brown, for appellee.

MORLING, J.—The purported will filed in the office of the clerk for probate is dated December 3, 1927, is all in typewriting except the purported signatures of the testator, George Baker Wood, and the two subscribing witnesses, Floyd O. Greene and Howard B. Fislar. It is identified as "Exhibit A." It bequeaths to testator's sister "Miss Eva W. Wood One Dollar" and the residue to testator's wife, Eva M. Wood, the proponent. The instrument filed for probate, Exhibit A, was found in the safe of decedent. During the trial proponent produced a carbon copy of the instrument filed (identified as "Exhibit B") which she testified was given to her by decedent. This carbon copy purported to be executed in the same manner and witnessed by the same persons as the instrument filed. The court submitted both instruments to the jury for them to determine whether either of them was executed by the testator and witnessed by the purported subscribing witnesses as required by statute. Proponent's main proposition here is that the verdict is not sustained by sufficient evidence. The burden of proof is on her. She rested her case upon the testimony of the two purported subscribing witnesses, Greene and Fislar, and a number of experts whose testimony was based upon comparison of signatures.

About the date of the instrument offered for probate Fislar, who was then associated with Greene, in the real estate business, having an office on the same floor with decedent, prepared on the typewriter for decedent's execution a will, the contents of which do not appear. No witness testifies to personal knowledge of the execution of either instrument in question by testator or to the subscription of either witness thereto. Fislar testifies that the signature of his name to neither instrument is his "but it looks very much like it." "I am sure that (his purported signature to the instrument filed) was not written by me. The name Howard B. Fislar appearing on Exhibit B is not my signature. I did not typewrite Exhibit A or Exhibit B, and do not know who did typewrite them. * * * Q. You knew Dr. Wood's signature didn't you? A. I was quite well acquainted with his signature. Q. And you would say that is his signature that appears on this will, or Exhibit A? A. I couldn't say exactly as to that. Q. Well, it is your best judgment it is? A. It looks very much like his signature. Q. Don't you believe it is Dr. Wood's signature that appears on Exhibit A? A. I do not

know. Q. If it was Dr. Wood's signature appearing there the will was all right wasn't it? A. If this was? Q. Yes. A. No, sir. * * *I never saw Exhibit A or Exhibit B until they were shown to me here on the stand today. I did not typewrite either Exhibit A or Exhibit B and did not sign either of them. I prepared a form of will for George Baker Wood, and as I remember, it was in the early part of December, 1927. I obtained Mr. Greene's signature upon the form I prepared in our office. * * * At the time I asked Mr. Greene to sign, Dr. Wood had not signed * * * George Baker Wood was not present. Mr. Greene signed at my request, and at the time he signed there were no signatures upon this form of will. * * * George Baker Wood was not present in any of our office rooms at the time Mr. Greene signed * * * There was no connection between our office and Dr. Wood's office. I did not sign this form of will as a witness while Mr. Greene was in the office with me; but put my signature to it after he had gone, and at that time there was no other signature on it except that of Mr. Greene. I then took the will and went to the doctor's office with it, perhaps fifteen minutes later. * * * I handed the document over to the doctor and asked him to look it over and see me later, to which he said 'all right.' He took it and at that time it had my signature and Mr. Greene's on it, but no signature of George Baker Wood. * * * The doctor had told me that he was going away that evening to the coast, and I think he went. I did not see him again until about the first of March, 1928. Dr. Wood did not at any time mention to me that the signature George Baker Wood on Exhibit A was his signature. He never said anything to me about the signature George Baker Wood on Exhibit A. * * * He never said anything to me about a signature George Baker Wood on any form of will being his signature. He never had any conversation with me about the paper I handed him that afternoon, either at the time or after I had handed it to him; and never talked to me about that paper after he returned from the west or at any time during his life. I do not know what he did with the form of will I turned over to him. * * * The reason I know that Exhibit A is not the form of will which I prepared for Dr. Wood is that I used a legal size sheet of paper and not a letter head, in drawing the will. Another thing, I never had green ink in my office. I always used black ink, and these exhibits are

signed in green; also I used a revoking clause in the form of will I drew, a clause revoking any prior wills that had been drawn or executed prior to this one. Such a clause is not present in Exhibit A. I also notice that the sister's name is wrong. I was very careful to get the names correct in that will. * * * Q. Give the court and jury your best judgment as to whether or not that is the signature of Floyd O. Greene. A. I couldn't say. * * *''

Greene testifies:

''The name Floyd O. Greene on the paper marked Exhibit A looks like my signature. As to my judgment as to whether or not it is my signature, the only thing I could say is that it looks like it. Q. What is your best judgment as to whether you signed that? A. Well, that day, that afternoon, if I remember. Q. No, you can just answer that if you will. A. . Well, it looks like I signed it. * * * Q. Well, according to your judgment, independent of this, wouldn't you say that was about the time it was signed by you? (December 3, 1927.) A. Well, I don't just remember. I know it was December, the fore part of December, 1927. I couldn't swear to the signature of my former partner, Howard B. Fislar, on Exhibit A. It looks similar to his handwriting. I am not acquainted with Dr. Wood's handwriting at all, and could not say as to his signature on Exhibit A. * * * I did not sign up another instrument similar to Exhibit A at the same time, to my knowledge. I would say that my name on Exhibit B looks like my handwriting; but I do not remember signing but one paper. I do not remember signing Exhibit B. * * * I am not familiar with Dr. Wood's writing and couldn't swear that his name on these exhibits was his signature. I did not see Fislar sign these exhibits. * * * Q. Is this the first time, Mr. Greene, that you have seen Exhibit A? A. This is the first time. Q. Today? A. Today. Q. I mean, Mr. Greene, is this the first time you have seen Exhibit A in the completed form, that is with the signatures on it? A. This is the first time excepting the day. That looks like my handwriting. I signed it up at the office. I guess I didn't pay much attention to it. Q. But, Mr. Greene, did you ever see a signature purporting to be Howard B. Fislar's on the document which you have described, before it was handed to you here today?

A. No sir. * * * The day on which I was asked to sign a piece of paper upon which there was typewriting, but no handwriting, was early in December, 1927. Since I have seen that document I can say it was December 3rd. On the day that I put my signature upon this piece of paper there were no signatures on it or handwriting prior to the time I placed my handwriting and signature on it. There was no handwriting purporting to be the signature of George Baker Wood and none purporting to be the signature of Howard B. Fislar. * * * Dr. George Baker Wood at no time ever mentioned to me that he had written his name and signature upon the piece of paper upon which I put my signature, and never acknowledged to me any signature of his upon that piece of paper. Today is the first time I have ever seen this signature George Baker Wood on Exhibit A. * * * George Baker Wood never told me at any time that he adopted the signature George Baker Wood which appears on Exhibit A. I never saw him sign Exhibit B and he never acknowledged to me that the signature George Baker Wood which appears upon Exhibit B * * * was his signature; and he never adopted the signature appearing on Exhibit B in my presence as his signature. George Baker Wood never requested me to sign his will for him and I never at any time had any conversation or communication with him about signing any piece of paper designated as a will as a witness thereon.''

This testimony though more elaborate in the abstract and amendment sufficiently for present purposes sets out the only evidence in the record relating to the direct fact of the affixing of the signatures of testator or witnesses to any will. Experts on both sides gave their opinions as to the genuineness of all three signatures. Clearly, proponent was not entitled to either a directed verdict or a new trial on the ground that she had as matter of law established the legal execution of the alleged will.

II. The court told the jury that several witnesses had testified both on behalf of proponent and of contestant, giving their opinions respecting the genuineness or non-genuineness of the signatures of the deceased and the alleged witnesses and that evidence respecting handwriting may be given by experts, by comparison, or by comparison by the jury, with writings proven or admitted to be genuine, and ''as to this character of testimony given by several witnesses it will be for you to say how

much weight, if any shall be given to the same, taking into consideration the amount of skill, knowledge and experience possessed by the witnesses. While it is proper for you to consider such evidence by experts, or by comparison, and to give it such weight as you think it justly entitled to receive, yet it is regarded in law as the lowest order of evidence, or evidence of the most unsatisfactory character. * * *'' Proponent excepted in this "that the evidence of experts on handwriting, and the evidence obtained by the jury from its own comparison of disputed with genuine signatures, are both characterized in said instruction as evidence regarded in law as the lowest order of evidence, or evidence of the most unsatisfactory character, whereas said characterization is proper to be applied only to the evidence of experts in handwriting.'' This exception cannot be sustained. If the evidence of experts is of the lowest order and most unsatisfactory character surely the observations of the jurors from comparison would be of equally low and unsatisfactory order. We may repeat that proponent's expert witnesses base their opinions upon comparison of signatures. See Keeney v. De la Gardee, 212 Iowa 45.

 III. The court told the jury in Instruction Number 10 that if the signatures of decedent and of the subscribing witnesses to at least one of the duplicates were genuine they should find for proponent. In Instruction Number 11 that if they found such signatures to be genuine "before a verdict can be returned for the proponent you will proceed to consider and determine whether the said instrument or instruments is or were executed as required by statute. * * * That the burden of proof is upon proponent * * * to show that George Baker Wood signed at least one of the duplicate instruments * * * as and for his last will * * * and that said will was witnessed by two competent persons * * * who either have seen its execution as an instrument or the testator afterwards adopted or acknowledged his signature thereon in the presence of the witnesses, and who subscribed it for the purpose of establishing its authenticity, and who so subscribed as witnesses at the request, either express or implied, of the testator, or at the request of another person made in the presence of the testator and with the knowledge of the testator.'' By Instruction Number 12 the jury was told that it is not necessary that the subscribing witness shall

see the testator sign "but it is sufficient if he did in fact sign the will, provided he afterwards adopted or acknowledged the signature thereon in the presence of the witnesses, * * * where it is shown * * * that the signatures * * * are the genuine signatures of the deceased and of the persons named as witnesses, it is conclusively presumed that the instrument was signed by the deceased before it was witnessed, and the instrument is executed with the formality required by statute." By Instruction 13 the jury was told that if they found that the signatures of testator and the witnesses on one or both instruments "are the genuine signatures of the respective parties, before a verdict could be rendered for the proponent, Eva M. Wood, you must further find * * * that George Baker Wood signed at least one * * * as and for his last will and that Floyd O. Greene and Howard B. Fislar either saw George Baker Wood write his name thereto or * * * that the signature of George Baker Wood subscribed thereto, was adopted or acknowledged by George Baker Wood in the presence of Floyd O. Greene and Howard B. Fislar either together or separately, and that Floyd O. Greene and Howard B. Fislar subscribed their names thereto as witnesses to such act or declaration of George Baker Wood and at his request, either express or implied, * * * then if you do so find upon this phase of the case, then your verdict will be for the proponent * * *" Proponent "excepts to Paragraphs 10, 11, 12 and 13 * * * for the reason they contain inconsistent and erroneous statements of the law on the execution of wills, tending to confuse the jury and bring about an unjust verdict, in this: That instruction 10 instructs that if * * * the testator and the two subscribing witnesses signed the will * * * they will find for the proponent, and instruction Par. 12 instructs the jury that where it is shown * * * that the signatures * * * are the genuine signatures * * * it is conclusively presumed that the instrument was signed by the deceased before it was witnessed * * * while instruction Par. 11 instructs the jury that if they find * * * that the signatures * * * are the genuine signatures of the respective parties, before a verdict can be returned for the proponent they will proceed to consider and determine whether the instrument or instruments was or were executed as required by statute, and said instruction Par. 11 and instructions Pars. 12 and 13, require the jury before they can re-

turn a verdict for the proponent after finding \* \* \* that the signatures \* \* \* are genuine to further find that the subscribing witnesses were competent persons to witness a will \* \* \* and that they either saw the execution of the will by the testator or that he afterwards adopted or acknowledged his signature thereon in the presence of the subscribing witnesses, who must have subscribed it as witnesses at the request of the testator \* \* \*.'' It was not claimed by the exception that either instruction imposed an undue burden upon proponent, or that either instruction abstractly was wrong. The burden was on proponent not only to prove that the instrument offered for probate was signed by testator, or by some person in his presence and by his express direction, but to prove that the will was ''witnessed by two competent persons.'' Code, 1927, Section 11852. Proponent was not prejudiced by the instruction that she was entitled to a verdict if the jury found the signatures to be genuine. She has and claims no ground of exception to the instruction that she must prove that the instrument ''was executed as required by statute; that it was witnessed by two competent persons,'' nor has she any ground of complaint that the court told the jury that if it was shown that the signatures were genuine it was conclusively presumed that the instrument was signed by deceased before it was witnessed and with the statutory formality. Proponent has no ground for exception that the jury must find that the witnesses either saw decedent sign, or that in their presence decedent acknowledged the signature. She has no cause for complaint that the witnesses must have subscribed at decedent's express or implied request. The jury found against proponent on one or all of these propositions. The instructions were not as perspicacious as they might have been but they could not have been misunderstood to proponent's prejudice. They, neither singly nor in their totality, impose any undue burden upon her. If the jury had found against contestant and she were excepting we would have a different question. Error to the prejudice of proponent in overruling the exception as taken by her to Instructions 10, 11, 12 and 13 is not shown.

262

Other errors assigned are not sufficiently set forth and argued to call for discussion.—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, ALBERT, KINDIG, WAGNER, and GRIMM, JJ., concur.